In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00365-CR
_____

**SETH JACOB MARCEAUX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. CR22-0372**

**MEMORANDUM OPINION**

A jury convicted Seth Jacob Marceaux of felony-murder and sentenced him to fifty-three years in prison. Tex. Penal Code Ann. § 19.02(c). In two issues, Marceaux complains that the indictment that was returned by the Grand Jury was not properly pled, thereby depriving the trial court of the requisite subject-matter jurisdiction and that there is insufficient evidence to support his conviction. We affirm.

Background

On the night before the car wreck that killed Rance Cole, Marceaux and his then-wife, Ashley Marceaux, invited their friends over for dinner. Ashley and Marceaux got into an argument about Marceaux's leaving the house. Ashley had observed Marceaux consuming alcoholic beverages and did not want him to leave, but he eventually left and went to a home where he hung out with Trista Hester. Hester observed Marceaux drinking beer, "one after another" before leaving by himself in his work truck. Hester left the house in the early morning, and as she was driving down Highway 146, she observed the scene of an accident and called 911.

Bradley Wyatt lived near the scene of the accident. In the early morning hours of May 7, 2022, a loud bang woke him up and when he went outside, he observed two vehicles. The driver of one of the vehicles did not have a pulse. The driver of the other vehicle told Wyatt, "sometimes these things happen when I drink." The driver also told Wyatt he thought he had fallen asleep.

At about 6:00 that morning, Ashley received a call and a text message that Marceaux had been in a car accident. She went to the scene of the accident and spoke with Marceaux. He smelled of alcohol, and in her opinion based on her familiarity with his behavior, he was intoxicated. Marceaux admitted to Ashley that he had been driving his truck and the wreck occurred because he fell asleep.

2

Officer Chris Simmons with the Livingston Police Department responded to the accident. When he first spoke with Marceaux, he noticed Marceaux's pants were wet. He believes Marceaux urinated on himself. Simmons conducted standard field sobriety tests on Marceaux and observed several indicators. In conducting the walk and turn test, Simmons observed Marceaux stepping off the line, making an improper turn, and missing heel-to-toe. He also observed nystagmus – the jerking or bouncing of the eyes from side to side. On the one-leg stand test, Simmons noted Marceaux put his foot down and swayed while balancing. Simmons also noted that Marceaux kept missing or repeating numbers while counting during these divided-attention tests, but Simmons conceded this is not considered a clue on the standard field sobriety test.

Sgt. Allen Stanton, who conducted an accident reconstruction of the crash, testified that the reconstruction showed that Marceaux's truck was driving on the wrong side of the road when it struck Cole's truck head-on.

Dr. Miguel Laboy conducted an autopsy on Cole. He determined the cause of death to be multiple blunt force injuries and the manner of death an accident. According to Dr. Laboy, the blunt force injuries and the manner of death are consistent with Cole's having been involved in a motor vehicle accident. Cole's blood was also tested for several substances, including various drugs and alcohol, and there were no positive findings.

Shortly after the accident, Brenda Wright, a registered nurse at St. Luke's Hospital, obtained a sample of Marceaux's blood. Taylor Schwartz, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, tested Marceaux's blood sample for alcohol. The reported result was 0.206 grams of alcohol per a hundred milliliters of blood.

## Analysis

*The Indictment*

In his first issue, Marceaux argues the indictment did not properly vest the trial court with subject-matter jurisdiction. The State of Texas indicted Marceaux for the offense of felony murder, with alleged felony DWI serving as the underlying felony supporting the felony murder prosecution. Marceaux argues, "Because of the enhancement (two prior DWIs) increases the mandatory punishment of the DWI offense, it is properly treated as an element of the DWI 3rd offense and the prior convictions must be alleged in the charging instrument."

The State's original indictment read as follows:

The duly organized Grand Jury of Polk County, Texas presents in the District Court of Polk County, Texas, that in Polk County, Texas, Seth Jacob Marceaux, hereafter styled the Defendant, heretofore on or about May 7, 2022, did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, namely, by colliding his vehicle with a vehicle operated by Rance Ezra Cole, which caused the death of Rance Ezra Cole, and the said Defendant was then and there in the course of or immediate flight from the commission or attempted commission of a felony to-wit: Felony Driving While

4

Intoxicated, in that the Defendant was then and there operating a motor vehicle in a public place while the said Defendant was intoxicated;

And it is further presented in and to said court that prior to the commission of the aforesaid offense by the said Defendant, on the 7th day of October 2014, in the County Court Number 5 of Montgomery County, Texas, in cause number 14297348, the said Defendant was convicted of the offense of Driving While Intoxicated, and on the 17th day of November, 2017, in the County Court at Law of Polk County, Texas, in cause number 2017-0332, the said Defendant was convicted of the offense of Driving While Intoxicated, and said convictions became final prior to the commission of the aforesaid offense[.]

The trial court's scheduling order lists several deadlines for the parties, including a deadline for the State to amend or supplement its pleadings sixty days before trial, or September 7, 2023. The pre-trial hearing was set for October 4, 2023, and jury selection was set for November 6, 2023, at 8:30 a.m.

The State filed a motion to amend the indictment on September 26, asking the trial court to delete the words "intentionally and knowingly" in the first paragraph and to change "County Court Number 5 of Montgomery County, Texas" to "County Court Number 1 of Montgomery County, Texas" in the second paragraph. Marceaux objected to the motion, arguing the State filed it nineteen days after the deadline in the trial court's scheduling order. He also argued that allowing the State to amend the indictment would substantially prejudice his rights because it would change the culpable mental state the State was required to prove at trial.

The State then filed a Motion to Abandon Surplusage in the Indictment on October 4. The State requested the trial court abandon the words "intentionally and

knowingly" in the first paragraph of the indictment, arguing that the State is not required to prove that the defendant intentionally or knowingly collided his vehicle with the vehicle driven by the complainant. The State also requested to abandon as surplusage the indictment's allegations of two prior DWI convictions. The State argued that while they must prove the existence of two prior DWI convictions, it was not necessary to include them in the indictment. The trial court granted the State's motion on October 4.

At the pretrial hearing that same day, the parties agreed they were ready for jury selection on November 6 with trial to begin the following day. On November 6, Marceaux filed a Motion to Quash the Indictment claiming it failed to plead all elements of the offense. According to Marceaux, "In this case, the State is alleging felony murder with a DWI 3rd as the underlying felony offense. Because the enhancement (the two prior DWIs) increases the mandatory minimum punishment for the DWI, it is properly treated as *an element* of the DWI 3rd offense and the prior convictions must be alleged in the charging instrument." Marceaux argued that without these allegations, the indictment failed to vest the trial court with subject matter jurisdiction.

Prior to jury selection on November 6, the trial court held a hearing on Marceaux's Motion to Quash the Indictment and allowed the State to go forward. The State then made a motion to abandon the last several words after the phrase

"Felony Driving While Intoxicated" in the first paragraph of the indictment. Marceaux did not object, and the language was abandoned.

After the court's rulings, the indictment that was presented at trial and to which Marceaux pled not guilty read as follows:

> In the name and by the authority of the State of Texas, the duly organized grand jury of Polk County, Texas, presents in the District Court of Polk County, Texas, that in Polk County, Texas, Seth Jacob Marceaux, hereafter styled the Defendant, heretofore on or about May 7, 2022, did then and there commit or attempt to commit an act clearly dangerous to human life, namely by colliding his vehicle with a vehicle operated by Rance Ezra Cole, which caused the death of Rance Ezra Cole, and the said Defendant was then and there in the course of or in immediate flight from the commission or attempted commission of a felony, to-wit, felony driving while intoxicated, against the peace and dignity of the State.

"When reviewing a trial court's decision to deny a motion to quash an indictment, we apply a *de novo* standard of review." *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Criminal defendants have the right to have notice of the charges against them. *See* U.S. CONST. amend. IV; Tex. Const. art. I, § 10. Thus, indictments "must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *see also* Tex. Code Crim. Proc. Ann. arts. 21.02-.04, .11 (setting out statutory requirements for indictments). "The proper test to determine if a charging instrument alleges 'an offense' is whether the allegations in it are clear enough that one can identify the offense alleged. If they are, then the

7

indictment is sufficient to confer subject matter jurisdiction." *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007). "Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged and is that penal code provision one that vests jurisdiction in the trial court?" *Id.* Courts may look to the heading of the charging instrument and whether the indictment was returned in a felony court. *Kirkpatrick v. State*, 279 S.W.3d 324, 329 (Tex. Crim. App. 2009). Even if the indictment contains substantive defects, it will confer subject-matter jurisdiction on a district court if it is "capable of being construed as intending to charge a felony." *Teal*, 230 S.W.3d at 181.

A person commits felony murder if he "commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code Ann. § 19.02(b)(3). Under this statute, the State must prove five things: "(1) an underlying felony, (2) an act clearly dangerous to human life, (3) the death of an individual, (4) causation (the dangerous act causes the death), and (5) a connection between the underlying felony and the dangerous act ('in the course of and in furtherance of…or in immediate flight from')." *Contreras v. State*, 312 S.W.3d 566, 583-84 (Tex. Crim. App. 2010). A

8

felony DWI offense may serve as the underlying felony in a felony-murder prosecution. *Lomax v. State*, 233 S.W.3d 302, 305, 309 (Tex. Crim. App. 2007). "An indictment for felony murder is not required to allege the constituent elements of the underlying felony." *Tata v. State*, 446 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citations omitted). "With respect to the elements of felony murder, it is generally sufficient for the indictment to allege the elements of the offense without specifying the manner and means used to commit the offense." *Id.*

Here, the heading on the indictment states, "MURDER 1st Degree" and cites section 19.02(c), the Penal Code section identifying murder as a first-degree felony. The indictment tracks the language of section 19.02(b)(3) and specifies the underlying felony as "Felony Driving While Intoxicated." The indictment was returned to the 411th District Court of Polk County, Texas, which has jurisdiction over felony offenses. *See Kirkpatrick*, 279 S.W.3d at 329. It was not necessary for the indictment to allege the elements of, nor the specific facts and circumstances of, the underlying felony – Felony Driving While Intoxicated. *Tata*, 446 S.W.3d at 463. We conclude the indictment was sufficient to give Marceaux notice that the State intended to prosecute him for a felony offense, thereby vesting the district court with subject-matter jurisdiction. *See Kirkpatrick*, 279 S.W.3d at 328-329; *Teal*, 230 S.W.3d at 182. We overrule Marceaux's first issue.

*Sufficiency of the Evidence*

In his second issue, Marceaux argues there is insufficient evidence to establish the causation element of felony murder. Specifically, he asserts that there is no testimony showing Marceaux was intoxicated.

The jury is the exclusive judge of the credibility of the evidence and the weight to be given to that evidence. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). As such, the jury is responsible for resolving conflicts in the testimony, is free to believe some, all or none of a witness's testimony, and may assign as much or as little weight to a witness's testimony as it sees fit. *Id*. Jurors may also draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16.

When examining whether a criminal conviction is supported by legally sufficient evidence, we compare the evidence to the elements of the offense as defined by a hypothetically correct charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). We consider all the evidence, viewed in the light most favorable to the verdict, along with the inferences that could reasonably be drawn from the evidence. *Hooper*, 214 S.W.3d at 13. We do not assess the credibility of the evidence, reweigh the evidence, nor substitute our judgment for that of the jury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The evidence is legally sufficient to support the conviction if any rational trier of fact could have found each of the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted); *see also Garcia v. State*, 667 S.W.3d 756, 761-62 (Tex. Crim. App. 2023) (citation omitted) ("A proper review of evidentiary sufficiency considers the cumulative force of the evidence.").

A person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). "Intoxicated" is defined in part as having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(B). An offense under section 49.04 is a third-degree felony if the defendant has previously been convicted two times of any offense relating to the operating of a motor vehicle while intoxicated. *Id.* § 49.09(b)(2). [1]

The record contains sufficient evidence that Marceaux was intoxicated. Taylor Schwartz, a forensic scientist with the Texas Department of Public Safety, testified Marceaux's blood had an alcohol concentration of 0.206. Other witnesses at trial testified they observed Marceaux to be intoxicated before or near the time of

---

[1]Marceaux does not contest his two prior DWI convictions.

the accident. Ashley testified Marceaux consumed alcohol the evening before the accident. She told the jury that she and Marceaux argued before he left the house and that she didn't want him to leave because he had been drinking. When she arrived at the scene of the accident, she smelled alcohol on Marceaux and formed the opinion that Marceaux was intoxicated. She testified she has seen Marceaux intoxicated on previous occasions, so she is familiar with his behavior when he drinks. Trista Hester also saw Marceaux the night before the wreck. Although she previously told the prosecutor that she did not believe Marceaux was intoxicated, she testified at trial that she saw Marceaux drink "one [drink] after another." Bradley Wyatt, who lives near the scene of the accident, testified Marceaux told him that "sometimes these things happen when I drink" and that he had fallen asleep. Officer Chris Simmons conducted standard field sobriety tests on Marceaux, and the clues Simmons observed indicated Marceaux was intoxicated. The accident reconstruction expert testified that Marceaux was driving on the wrong side of the road when he struck Cole's vehicle head on.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Marceaux committed felony DWI, and, in the course and furtherance of the commission of felony DWI, committed an act clearly dangerous to human life when he collided his vehicle with a vehicle operated by Cole, causing Cole's death. *See Jackson*, 443 U.S. at 319; *see*

*also* Tex. Penal Code Ann. § 19.02(b)(3). Accordingly, we conclude the evidence is sufficient to support Marceaux's conviction for felony murder. We overrule his second issue.

## Conclusion

Having overruled Marceaux's issues, the trial court's judgment is affirmed.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 3, 2025
Opinion Delivered August 20, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.